IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK MENOLASCINA, | ) | |
| | ) | No. 12 C 90 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jack Menolascina filed a complaint against the Government under the Federal Tort Claims Act ("FTCA") alleging that he fell and broke his hip due to the negligent acts or omissions of Deputy United States Marshals ("marshals"). But because the marshals' alleged actions in this case fall under the discretionary function exception to the FTCA, the FTCA does not apply and the Government has not waived its sovereign immunity. Therefore, the Court grants the Government's motion for summary judgment.

## FACTS[1]

On August 31, 2009, Menolascina was a prisoner at the Metropolitan Correctional Center ("MCC") in Chicago, and was transported to the U.S. District Court for the

---

[1] The Government moves to dismiss Menolascina's complaint pursuant to Rule 12(b)(1), or alternatively for summary judgment pursuant to Rule 56. The Government also filed a statement of material facts pursuant to Local Rule 56.1, and Menolascina responded to the Government's facts and submitted supplemental facts of his own, which the Government answered. Because the parties and the Court rely on facts outside the complaint, the Court construes the Government's motion as a motion for summary judgment. Therefore, the Court resolves all disputed facts and reasonable inferences in the light most favorable to Menolascina. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

Northern District of Illinois by marshals in order to attend a detention hearing. His trip to the courthouse proceeded without incident or injury. The facts suggest that Menolascina was in poor health at the time of his trip to court. At Menolascina's hearing that day, his attorney told the court that Menolascina's health was in a very precarious state due to end stage liver failure, and the district judge allowed him to remain seated throughout the hearing, noting that he was "not a well man." Also at that hearing, the chief medical officer of the MCC testified that the MCC had initially refused to accept custody of Menolascina following his arrest because of concerns that he was suffering from health issues that the facility was not equipped to handle.[2] Menolascina alleges that at the hearing the district judge instructed the marshal in charge of Menolascina to "keep an eye on" him, and that the marshal said that she would, although the hearing transcript does not indicate that the judge spoke to the marshal at the hearing. Menolascina further alleges that, after the hearing, on the way to the prisoner holding area in the Courthouse, he fell against the elevator wall. He was apparently uninjured by that fall.

Menolascina's injury occurred several hours later, as he attempted to board the van that would return him to the MCC. According to Menolascina, he was the last in a line of prisoners to board the van, and three marshals, including the marshal who was present at his court hearing, were about six feet behind the prisoners as they boarded. In order to board the van, Menolascina, who was shackled, had to step onto a portable

---

[2] The marshals had obtained custody of Menolascina on September 12, 2008, and sent him to a local hospital for treatment at that time. On September 19, 2008, Menolascina was released from the hospital and transferred to a prison medical facility in Columbia, South Carolina. On February 20, 2009, Menolascina left the prison medical facility, and was again transferred to a local hospital. Finally, on February 26, 2009, Menolascina was sent to the MCC where he stayed until the date of the incident in question.

platform that he described as a "crate." He alleges that the crate was "underneath the van a little bit too far,"[3] and when he stepped on it the crate flipped out from under him and he fell, breaking his hip. He further alleges that none of the marshals physically assisted his attempt to board the van, although they knew or should have known that it was dangerous, given his poor health, to ask him to board the van in shackles without assistance. He does not allege that he asked the marshals for assistance in boarding the van.

## DISCUSSION

Menolascina alleges that the marshals' negligent failure to assist him in boarding the van and their negligent placement of the crate constitute an actionable tort. Federal inmates may sue the United States pursuant to the FTCA for injuries sustained while incarcerated in federal prisons, *United States v. Muniz*, 374 U.S. 150, 153 (1963), and Menolascina's complaint seeks $1 million in damages under the FTCA, 28 U.S.C. § 1346(b)(1). The FTCA is only a limited waiver of sovereign immunity, however, subject to certain exemptions designated by Congress. One of those limitations is what is known as the discretionary function exception to the FTCA, which says that the FTCA does not apply to:

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a

---

[3] Menolascina's complaint did not include any allegation that the crate was improperly placed underneath the van; this allegation first appeared in his response to the Government's motion for summary judgment and in response to the Government's statement of material facts. In his response brief, Menolascina requested leave to amend his complaint to include this allegation. Rather than granting leave to amend, the Court will consider Menolascina's allegation that the marshals negligently placed the crate as if the allegation were properly pled in his complaint.

3

> federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). For the exception to apply, "(1) the action complained of must involve an element of judgment or choice; and (2) the action must relate to considerations of public policy." *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995). When the discretionary function exception applies, sovereign immunity bars suit *even if the action was negligent or an abuse of discretion. Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997) (the discretionary function exception protects the government from suit "even if [it] abused its discretion or was negligent in the performance of its discretionary functions").

The first prong is satisfied if "the challenged conduct involves an element of judgment . . . of the kind that the discretionary function exception was designed to shield," *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991), but is not satisfied where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Calderon*, 123 F.3d at 949 (quoting *Gaubert*, 499 U.S. at 322). The statute and regulation relevant to the marshals' care and transportation of prisoners do not prescribe any specific course of conduct, but rather allow the marshals wide discretion. *See* 18 U.S.C. §4086 ("marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution") and 28 C.F.R. § 0.111(j) (the director of the marshals service is required to "supervise all activities of the U.S. Marshals Service including . . . transportation of prisoners held in the custody of a marshal"). These directives afford the marshals significant discretion to determine how to keep and transport prisoners, and there are no other directives specifying the procedures that the marshals must use to transport

4

prisoners. *Crane v. United States*, No. 3:10-68, 2011 WL 7377317 (D. Or. Nov. 29, 2011) (because there are no mandatory directives specifically governing marshals' conduct in loading and unloading prisoners from vehicles, the marshals have discretion in deciding how to carry out those duties). The conduct at issue in this lawsuit—determining how to load prisoners into a van to transport them back to prison—is exactly the kind of discretionary function that the exception was designed to shield. Therefore the first prong of the discretionary function exception test is satisfied.

The second prong of the discretionary function exception test is also satisfied because the procedures used to transport prisoners clearly relate to considerations of public policy. *See Crane*, 2011 WL 7277317 at *7 (finding that deputies' choices whether to assist prisoners exiting transport van "are the kind of policy-based decisions that the DFE is intended to shield"). The marshals must balance competing public policy considerations, including prisoner safety, the safety of the marshals and the public, and prisoner escape. Further, where established governmental policy allows a government agent to exercise discretion, as here, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324; *see also Calderon*, 123 F.3d at 950 (courts should "presume that the actions are grounded in public policy in cases where the statute or regulations allow the government agent to exercise discretion"). The public policy presumption applies in this case because the marshals had statutory and regulatory discretion to decide how to transport prisoners.

Menolascina essentially concedes that the way in which the marshals transport prisoners is generally covered by the discretionary function exception. *See, e.g.*, Response Br. (Dkt. 16) at 6 ("it is at least arguable that both public policy considerations

and the exercise of judgment are invoked" in the marshals' decision whether to treat Menolascina differently than the generally treated the other prisoners). But he argues that the marshals' decision as to where to place the crate in order for prisoners to climb into the van did not involve any exercise of discretion or consideration of public policy.

Menolascina cites *Coulthurst v. United States*, 214 F.3d 106, 110 (2d Cir. 2000), in which a prisoner was injured when the cable on a piece of weightlifting equipment snapped. There, the court noted that the complaint could fairly be read as alleging a tort to which the discretionary function exception would not apply because it could be read to encompass negligent actions outside the area of the defendants' discretion. The snapping of the cable, the court noted, could have been the product of negligence within the scope of their discretionary duty to design adequate inspection procedures for the weight room equipment, but outside the scope of their discretionary duty if it resulted from a failure to inspect the cable as required by such inspection procedures. *Id.* at 109. Because the complaint's allegations were susceptible to either interpretation, the court held that it was not clear whether the exception applied and so the complaint could not be dismissed.

This, however, is not a case where the complaint alleges that the marshals failed to properly execute a specific directive they had been given. Here, the complaint plainly focuses on conduct within the scope of the marshal's discretion in transporting prisoners. They had discretion to determine where to place the crate, whether to reach under the van to reposition the crate, or whether to permit the use of the crate at all. Therefore, even if the marshals abused their discretion or were negligent in exercising their discretion— which is what Menolascina argues—the discretionary function exception applies and sovereign immunity bars the lawsuit.

This is not to say that everything a marshal might do while transporting a prisoner is beyond the reach of the FTCA. If a marshal fell asleep at the wheel while driving prisoners to the courthouse, for example, it would be difficult to fashion an argument that the discretionary function exemption would apply; there is plainly no public policy justification for that conduct. Conversely, there are many conceivable public policy reasons why the marshals might choose to place the crate in a certain location or choose whether to physically help a prisoner board the van, such as protecting the marshals' safety, allowing the prisoners to safely board the van, and preventing the prisoners from using the crate as a weapon. And Menolascina does not suggest that the marshals violated any specific policy regarding loading prisoners into the van. The actions Menolascina complains of were therefore within the marshals' discretion, and are therefore further presumed to relate to considerations of public policy. *Gaubert*, 499 U.S. at 324; *Calderon*, 123 F.3d at 950.

The Seventh Circuit's opinion in *Palay v. United States*, 349 F.3d 418 (7th Cir. 2003), on which Menolascina also relies, only confirms that the discretionary function exemption applies where, as here, the conduct at issue involves an "element of choice or judgment grounded in public policy considerations." *Id.* at 432. In *Palay*, the plaintiff alleged that he was negligently placed in a prison unit of convicted prisoners when he should have been placed in a unit of pre-trial detainees, and he claimed that he was injured in a fight because of that placement. *Id.* at 421. The Seventh Circuit ruled that although regulations gave the prison some discretion to determine whether to segregate pretrial detainees from convicted prisoners, there was no evidence that the prison's internal policies allowed a pretrial detainee to be placed with convicted prisoners. *Id.* at

429. If the prison's internal policy prohibited placing pretrial detainees with convicted prisoners, then the individual who was responsible for the plaintiff's placement must have acted outside of his discretion. Because the Seventh Circuit could not determine whether the plaintiff's placement with convicted prisoners was within the scope of the prison official's discretion, it found that the discretionary function exception did not necessarily apply. *Id.*

Here, no one suggests that the marshals were required to follow any specific policy regarding where to place the crate when loading prisoners, or when to help a prisoner board the van. Rather, the marshals have discretion in performing those actions, and there is no indication that their actions were "based on grounds other than considerations of public policy." *Calderon*, 123 F.3d at 950 (finding that prison officials have discretion whether to take action to protect a prisoner who is threatened by his cellmate). Therefore, the discretionary function exception applies to the marshals' actions, the FTCA does not waive the Government's sovereign immunity, and therefore the Government is entitled to summary judgment on sovereign immunity grounds.

* * *

For all of these reasons, the Court grants the Government's motion for summary judgment. Though Menolascina requests leave to amend his complaint to add allegations that the marshals' placement of the crate was negligent, such amendment would be futile. Placement of the crate was within the scope of the marshal's discretion and Menolascina does not suggest that he could include other facts that would indicate that the marshals' actions were outside of the scope of their discretion. Therefore, the dismissal is with prejudice.

Date: February 26, 2013

John J. Tharp, Jr.
United States District Judge